**NATIONAL CABLE TELEVISION ASSOCIATION, INC., Petitioner,**

v.

**FEDERAL COMMUNICATIONS COMMISSION and United States of America, Respondents,**

GTE California Incorporated, United States Telephone Ass'n, City of Cerritos, California, Contel Corp., Intervenors.

No. 89-1517.

United States Court of Appeals, District of Columbia Circuit.

Argued May 8, 1990.

Decided Sept. 18, 1990.

As Amended on Denial of Rehearing and Rehearing En Banc Dec. 4, 1990.

Bruce D. Sokler, with whom James A. Kirkland, Brenda L. Fox, and David Nicholl, were on the brief, for petitioner.

Gregory M. Christopher, Counsel, Federal Communications Com'n ("FCC"), with whom John E. Ingle, Deputy Associate Gen. Counsel, FCC, and James F. Rill, Asst. Atty. Gen., Catherine G. O'Sullivan,

and Laura Heiser, Attys., Dept. of Justice, were on the brief, for respondents. Daniel M. Armstrong, Atty., FCC, also entered an appearance for respondents.

James R. Hobson, Richard E. Wiley, and Philip V. Permut (for GTE California Inc.) and John B. Richards (for City of Cerritos, California), were on the joint brief for intervenors.

Martin T. McCue and William R. Malone, entered appearances for intervenor U.S. Telephone Ass'n. John Wohlstetter, entered an appearance for intervenor Contel Corp.

Before WALD, Chief Judge, and MIKVA and BUCKLEY, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

We are asked to review a decision of the Federal Communications Commission granting the General Telephone Company of California authority to construct and maintain coaxial cable and fiber optic facilities for the use of a cable television company, Apollo Cablevision. As a rule, a telephone company is prohibited by the Cable Communications Policy Act of 1984 from providing video programming through an affiliated cable company unless the prohibition is waived by the Commission pursuant to certain statutory exceptions. General and Apollo were found to be affiliated because General had entered into a business relationship with Apollo's corporate parent, T.L. Robak, Inc. The Commission nevertheless granted General a waiver because it believed the project held great promise for development of new technologies that would benefit the viewing public. While we generally agree that the Commission adequately showed that the potential benefits were significant, the Commission failed to explain why General must retain Robak for the construction of the facilities, thus giving rise to the prohibited affiliation. We therefore remand for further consideration.

## I. BACKGROUND

### A. Statutory Background

Section 613 of the Communications Act of 1934, as amended by the Cable Communications Policy Act of 1984 ("Cable Act"), provides in relevant part as follows:

(b)(1) It shall be unlawful for any common carrier, subject in whole or in part to subchapter II of this chapter, to provide video programming directly to subscribers in its telephone service area, either directly or indirectly through an affiliate owned by, operated by, controlled by, or under common control with the common carrier.

. . . .

(b)(4) In those areas where the provision of video programming directly to subscribers through a cable system demonstrably could not exist except through a cable system owned by, operated by, controlled by, or affiliated with the common carrier involved, or upon other showing of good cause, the Commission may, on petition for waiver, waive the applicability of paragraphs (1) and (2) of this subsection. *Any such waiver shall be made in accordance with section 63.56 of title 47, Code of Federal Regulations (as in effect September 20, 1984)* and shall be granted by the Commission upon a finding that the issuance of such waiver is justified by the particular circumstances demonstrated by the petitioner, taking into account the policy of this subsection.

47 U.S.C. § 533(b)(1), (4) (Supp. V 1987) (emphasis added).

This section thus codified the Commission's general policy, in place since 1970, of excluding telephone companies from providing cable television services in their respective service areas, either directly or through controlled or affiliated companies ("cross ownership"). *See Applications of Telephone Companies for Section 214 Certificates*, 21 F.C.C.2d 307, 325, *recon. in part*, 22 F.C.C.2d 746 (1970), *aff'd sub nom. General Telephone Co. of the Southwest v. United States*, 449 F.2d 846 (5th Cir.1971). It also adopted the Commission's specific policy governing the issuance of waivers, as described in the regu-

lations identified in the Cable Act. These allow waivers either (1) because otherwise cable service could not exist in the area to be served or (2) because of "other good cause."

The Cable Act further provides that in granting waivers, the Commission shall "tak[e] into account the policy" of subsection 613(b). 47 U.S.C. § 533(b)(4). It is clear enough from Congress's explicit adoption of the Commission's ban on cross ownership that the policy of this subsection is to promote competition by curtailing the opportunities telephone companies would otherwise have to take advantage of their monopoly control of the conduits and telephone poles that are required for the transmission of video programs to cable subscribers. *See General Telephone Co. of the Southwest*, 449 F.2d at 850–51. Commission rules define "control" and "affiliate" as follows:

> As used above, the terms "control" and "affiliate" bar any financial or business relationship whatsoever by contract or otherwise, directly or indirectly between the carrier and the customer, except only the carrier-user relationship.

47 C.F.R. § 63.54, note 1(a) (1989).

B. Procedural History

In the early 1980's, the city of Cerritos, California, began the task of bringing appropriate cable television services to its citizens. *Cerritos Opposition to Applications for Review* at 8. After in-depth studies to determine its needs, the city issued a Request for Proposal ("RFP"). *See id.*, Attachment A. Cerritos distributed the RFP to over seventy cable operators and suppliers, and advertised with major cable television trade associations. *Id.* at 9.

Despite this publicity, there were no responses to Cerritos' RFP by the expiration of the first deadline. *Id.* After two extensions, Cerritos succeeded in obtaining four proposals for the provision of cable service. One was the Apollo proposal at issue here, which provided for General's participation in the construction and maintenance of the facilities. The city, through an independent consultant, deemed the Apollo proposal to be the most responsive to the RFP.

*See id.* at 10. Among other factors, the city was impressed with General's expertise in the construction of underground facilities, an important factor given the city's preference for an underground system. *Id.* at 13–16. As a result, Cerritos issued a "Resolution of Intent to Do Business" with Apollo in February of 1987.

Several days later General filed an application with the FCC for permission to build and operate the underground coaxial and fiber optic video cable facilities contemplated by the Apollo proposal. It planned to construct and operate the facilities for the use of Apollo, with additional capacity to be used by GTE Service Corporation ("GTE"), an affiliate of General. General stated that its proposed construction would serve the public interest both by bringing cable service to Cerritos for the first time and by allowing General and GTE to test the comparative transmission quality of video facilities using coaxial cable and fiber optics. General explained that the unique arrangement it had worked out with Apollo, by which Apollo would allow transmission of its video programming to be alternated over coaxial and fiber optic cable, would help to bring new technologies and services to the public.

Petitioner in this case is the National Cable Television Association, Inc. ("NCTA" or "Association"), a trade association of cable television operators, representing cable systems that serve approximately ninety percent of the country's cable television subscribers. On March 20, 1987, NCTA lodged a petition to dismiss or deny General's application. Among the several reasons offered by the Association in support of the application's summary dismissal was the claim that the proposed system would violate the rule against cross ownership because Apollo and General were affiliates for purposes of the Cable Act. NCTA based this claim on the terms of a contract between General and Apollo's corporate parent, T.L. Robak, Inc., for the construction of the system. According to the Association, the financing arrangements that were part of the construction contract resulted in an affiliation between General

and Robak, and hence with its subsidiary, Apollo. Petition to Dismiss at 5–6.

On April 12, 1988, the Chief of the Commission's Common Carrier Bureau issued his memorandum opinion and order. *General Telephone Co. of California,* 3 F.C.C. Rcd 2317 (1988) ("Bureau Order"). As an initial matter, the Bureau noted that the Cable Act barred *"any financial or business relationship whatsoever by contract or otherwise, directly or indirectly between the carrier and the customer, except only the carrier-user relationship." Id.* at 2319 (internal citations omitted, emphasis in original). Finding that the construction contract between Robak and General was not an exempt carrier-user relationship, and that General's contract must be imputed to Apollo, the Bureau determined that

> the instant construction proposal creates an affiliation between General and Apollo, and causes the contemplated arrangement to run afoul of the circumscription of the Cable Act and Section 63.54 of the rules.

*Id.* It thus agreed with the NCTA that General's contractual relationship with Robak made General derivatively affiliated with Apollo as well. The Bureau noted, however, that the Cable Act allowed the Commission to waive the cross-ownership prohibition where it could be demonstrated that without such cross ownership, cable service would not exist in Cerritos. 47 U.S.C. § 533(b)(4). The Bureau went on to find a waiver justified under this standard.

Specifically, the Bureau noted that Cerritos' initial RFP produced no viable responses. Its second, modified RFP produced three submissions—the Apollo proposal and two others—but an independent consultant retained by the city found that only the Apollo proposal would meet the specifications of the RFP. Bureau Order at 2322. The Bureau concluded that the Cable Act left communities with general authority to define the requirements for local cable service set forth in their RFP's; therefore, it would not question the city's determination that Apollo was the only viable provider.

NCTA applied for review of the Bureau's decision before the full Commission. The full Commission issued its Memorandum Opinion on July 17, 1989, granting a temporary waiver of the cross-ownership rule. *General Telephone Co. of California,* 4 F.C.C. Rcd 5693 (1989) ("Mem. Op."). The Commission vacated the Bureau's waiver and issued in its place a temporary waiver based on the Cable Act's "other good cause" criterion. Mem.Op. at 5694. *See* 47 U.S.C. § 533(b)(4). The Commission noted that it considered the potential for technological and marketing innovation to be a basis for a good cause waiver and that it enjoyed considerable latitude in permitting experiments promoting technological innovation. Mem.Op. at 5697.

Applying this standard to the General application, the Commission concluded that both the coaxial cable and the fiber components of the proposed service would test important new technologies, that the broad range of General's technical and marketing experiments was unique, and that to foreclose them would deprive the public of the great potential benefits that could accrue from the work that General was prepared to conduct at its own cost and risk. It therefore granted General a five-year good cause waiver, subject to certain programming, accounting, and reporting requirements that were designed to minimize the detrimental effects of the waiver. *Id.* at 5699–700. NCTA then petitioned for review in this court.

## II. DISCUSSION

■ The central question to be resolved is whether the Commission exceeded its authority in determining that the waiver it granted to General was justifiable on the basis of "good cause."

Commission determinations on when waivers of its own rules are in the public interest are to be set aside only when arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. *See City of New York Mun. Broadcasting Sys. v. FCC,* 744 F.2d 827, 836 (D.C.Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985). The only substantive guidance Congress gave in the Cable Act for granting waivers was the provision that

they "be made in accordance with section 63.56 of title 47, Code of Federal Regulations (as in effect September 20, 1984) ... taking into account the policy of this subsection." 47 U.S.C. § 533(b)(4). We agree with the Commission's position that in adopting the FCC's waiver rule, Congress codified the rule as it was interpreted by the Commission at the time of adoption.

Thus, the Commission's clarification of its waiver policy in *Revision of the Processing Policies for Waivers of the Telephone Company–Cable Television "Cross Ownership Rules,"* 69 F.C.C.2d 1097, 1110 (1978), is particularly relevant. In that clarification, the Commission stated:

> [T]o give full effect to our waiver rules, we have decided to reconsider [our prior] interpretation of the phrase "other showing of good cause" in order to make plain that we are not blind to public interest and need showings which may demonstrate in particular cases the general benefits which could flow from joint operation of cable television and telephone facilities.... Such showings would, we believe, permit explicit consideration of recent technological developments and lead to a more knowledgeable consideration of public convenience and necessity.

*Id.* at 1110–11. The justification offered by the Commission in the instant case comports closely with this statement of policy. In granting General a good cause waiver, the Commission took explicit note of the benefits that could accrue from allowing General to pursue its experiments with advanced technologies, and its estimate of the potential benefits to cable television customers is amply supported by the record.

Our analysis cannot end there, however. The Cable Act requires the Commission to make a finding that the waiver is "justified by the particular circumstances demonstrated by the petitioner, taking into account the policy of this subsection." 47 U.S.C. § 533(b)(4). The "particular circumstances" of this case include the nature of Robak's participation in the project, and it is that participation that gives rise to the affiliation between General and Apollo. The policy of the subsection, which the Commission must take into consideration, is to prohibit a telephone company's cross ownership of a cable facility absent a finding that a community would not otherwise be served by cable or because a waiver is justified by good cause. The Commission, however, has failed in its obligation to explain why the advantages to be derived from General's application cannot be realized in the absence of a waiver, because it has not indicated why the use of Robak for design and construction was necessary to the proposal. Obviously, absent such a reason, the choice of another unrelated contractor would have eliminated the General–Apollo affiliation and, with it, the cross-ownership problem.

It is possible that there are unarticulated reasons why Robak's participation was essential to the success of the General–Apollo project and hence the waiver justified. It is well established, however, that we cannot affirm the Commission's actions on grounds other than those it presents. *Northwestern Indiana Tel. Co. v. FCC,* 824 F.2d 1205, 1210 (D.C.Cir.1987), *cert. denied,* —— U.S. ——, 110 S.Ct. 757, 107 L.Ed.2d 773 (1990). Where the Commission's failure to address or explain an issue leaves a court unable to understand Commission action, the appropriate course is to remand the case for further explanation. *See id.*

## III. Conclusion

The Commission has concluded that the General–Apollo project presents a number of advantages that might justify a good cause waiver. It has failed, however, to explain why any of these advantages require Robak's participation as General's contractor. While the Commission conceded that the "good cause" standard requires that it minimize the potential detriments of a waiver, Mem.Op. at 5700, it ignored the obvious alternative to a waiver; namely, removing the need for a waiver by eliminating Robak from the picture. The petition for review is therefore granted and

the case remanded to the Commission for further appropriate proceedings.

*So ordered.*